107  567
115  407

## NEWBERRY v. CARPENTER.

CONSTITUTIONAL LAW—CRIMINAL EVIDENCE—SEIZURE OF PRIVATE PROPERTY.

> An order of the circuit court, purporting to authorize the officers of the law to enter a private inclosure, and take from the possession of the owner a wrecked boiler and its appurtenances for use as exhibits upon the trial of another person for criminal negligence in causing the explosion of the boiler, is not only beyond any power vested in the court either by statute or common law, but is in violation of the constitutional guaranty against unreasonable searches and seizures. McGRATH, C. J., dissenting.

*Mandamus* by Helen H. Newberry, trustee, to compel William L. Carpenter, circuit judge of Wayne county, to vacate an order impounding certain property belonging to relator, for use as exhibits in a criminal cause. Submitted November 22, 1895. Granted December 24, 1895.

*Wells, Angell, Boynton & McMillan (Otto Kirchner,* of counsel), for relator.

*Allan H. Frazer,* Prosecuting Attorney, and *Ormond F. Hunt,* Assistant Prosecuting Attorney (*John G. Hawley,* of counsel), for respondent.

GRANT, J. The facts in this case are as follows: The relator was the owner of a large building in the city of Detroit, occupied by a printing establishment and other business enterprises. A large number of persons were employed in it. A steam engine and boilers were used in heating the building, and situated in the basement. On November 6, 1895, one or both of the boilers exploded, completely wrecking the building, causing the death of 37 persons, and injury to others. It was claimed by the prosecutor of the county that one Thompson, the engineer, caused the explosion by his criminal negligence in the management of the engine and boilers, and was therefore guilty of manslaughter. An indictment was promptly returned by the grand jury against him, charging him with that crime. Immediately after the explosion, the police department of the city of Detroit took possession of the building, and removed the *debris* and the bodies of those killed.

On November 16th the prosecuting attorney appeared before one of the circuit judges of the county of Wayne, and upon his verbal statement, without any sworn petition or affidavit, the following order was made:

"On motion of O. F. Hunt, assistant prosecuting attorney, and after hearing argument of H. E. Boynton and Otto Kirchner, friends of the court therein, it is ordered that the steam engine, boiler or boilers, and materials surrounding the same, and now upon the premises known as 45 and 47 Larned street, west, be and the same are ordered into the custody of the police department of the city of Detroit, as exhibits in said cause; the same, however, not to be removed from said premises. This order to remain in force only until the decision of a motion for injunction now pending before Judge Lillibridge, and subject to the terms of an order this day made by him."

The relator moved to vacate this order, which the court refused, and the object of this proceeding is to set aside that order.

Upon the hearing of this motion the prosecutor filed an affidavit, from which it appears that, after the police department took possession of the *debris,* an arrangement was made between him and Mr. Thompson, through his attorney, and the relator, that certain persons (expert engineers) should, on behalf of the respective parties, have free access to the engines, boilers, machines, and the premises, for the purposes of examination. The learned prosecutor further states in his affidavit that this property is essential to be used as exhibits upon the trial of Mr. Thompson, as well as for the further investigation into the causes of the disaster by the grand jury, and claims the right of the prosecution to hold them until all criminal cases connected with the disaster are tried. It thus appears that the prosecution had the entire control and charge of this property for a period of 10 days prior to the making of this order, and have had ample opportunity for an examination thereof by the officers and experts to determine the cause of the disaster, so far as it can be determined from these articles.

The importance of this case to the relator is apparent from the statement of her counsel in their brief that she is threatened with civil suits for damages upon the ground that she was guilty of negligence. Not only, therefore, is she by this order deprived of her private property, which she may desire to use in her business, but may be deprived of the evidence which may establish her innocence of any fault. She is charged with no crime. The broad claim of the learned prosecutor is that the courts possess the power, upon his motion, to enter upon the premises of private persons, and seize any property which may, in his judgment, have any bearing upon a crime with which another is charged. If the order in this case be sustained, it results in holding that a citizen's team, with which he earns a livelihood, may be seized by the police authorities because the prosecutor believes that such team was used by an alleged criminal

in the commission of a crime. If A. be arrested, charged with arson in the burning of B.'s house, and there be some evidence in the house believed to connect A. with the crime, the police authorities may seize and hold possession of the house for months, and until the trial, and prevent the owner from rebuilding. So, under like circumstances, a manufacturer might be deprived of the possession of his property necessary for the successful carrying on of his business. Other illustrations will readily suggest themselves. The power is certainly an extraordinary one, and those who assert it ought to be able to find some common or statute law authorizing it. The exercise of power no more arbitrary than this has caused revolutions.

The learned prosecutor cites the following authorities in support of his contention: Whart. Cr. Pl. & Prac. § 60; 1 Bish. New Cr. Proc. §§ 210, 211; *Ex parte Hurn*, 92 Ala. 102; *Woolfolk* v. *State*, 81 Ga. 551; *Spalding* v. *Preston*, 21 Vt. 9; *O'Connor* v. *Bucklin*, 59 N. H. 589. These authorities do not even hint at such an arbitrary and broad power. The citation in Wharton says only that "those arresting a defendant are bound to take from his person any articles which may be of use as proof in the trial of the offense with which the defendant is charged." The citation from Bishop goes no further. In *Ex parte Hurn*, money was taken from the possession of the prisoner, and delivered to the sheriff, who was afterwards served with a writ of garnishment at the suit of an attaching creditor of the prisoner. The sheriff paid the money into court, and asked instructions as to what he should do with it, while the prisoner asked an order for its restoration to himself. It was held that the case could not be reviewed upon *mandamus*. Many cases are cited and reviewed in that decision, none of which sustain the present case. That court quotes with approval the case of *Boyd* v. *U. S.*, hereinafter referred to. The conclusion of the court in that case is that

"it is the duty of an officer, having no other authority than the right to make the arrest, to search the party arrested, and seize and remove from him any dangerous weapon found on his person." That authority is confined by the decision to the seizure of articles found upon the person, and connected with the offense. In *Woolfolk* v. *State*, the respondent was charged with murder. During the progress of the inquest he was required to remove his clothing, and while so doing he made statements which were introduced upon the trial. It was objected that the circumstances surrounding the defendant amounted to force and compulsion, but the testimony was held proper. In deciding that case the court discusses the right of seizure, and speaks only of seizure from the person. In *Spalding* v. *Preston*, a large number of pieces of German silver, of the precise size and thickness of Mexican dollars, and made in that form for the purpose of being stamped and milled into counterfeit coin of that description, were taken by a sheriff from the person who was carrying them at the time to a place of manufacture, for the purpose of having them finished, so that he could put them in circulation as genuine coin, and were detained by the sheriff to be used as evidence against the person from whom they were taken, and also for the purpose of preventing their circulation. These were material to be used in counterfeiting. It was held that "the owner of them, *in the absence of evidence that they were put in that form without his knowledge or against his consent*, could not sustain trover against the sheriff therefor." *O'Connor* v. *Bucklin* is another case of taking property found upon the person of the party accused.

In my judgment, no case cited in the opinion of my brother, the chief justice, sustains the power here asserted. In *Closson* v. *Morrison*, 47 N. H. 482, the property was taken from the person of the respondent, and was levied upon by attaching creditors while in the

hands of the sheriff. The decision quotes the statute of that State authorizing search and seizure, and maintains the right of the officer to take weapons from the prisoner, and also money or other articles of value found upon him, by means of which, if left in his possession, he might procure his escape. *Commercial Exchange Bank* v. *McLeod*, 65 Iowa, 665, is a similar case, where the property of the prisoner, taken from his person upon arrest, was attached in the hands of the officer. In *Langdon* v. *People*, 133 Ill. 382, the property seized was a forged official certificate. It was held not to be private property, and was seized upon a search warrant made . upon due complaint.

In the case of *Boyd* v. *U. S.*, 116 U. S. 616, Mr. Justice Bradley, in delivering the opinion of the court, quotes with approval the language of Lord Camden in *Entick* v. *Carrington*, 19 Howell, St. Tr. 1029:

"No man can set his foot upon my ground without my license, but he is liable to an action, though the damage be nothing; which is proved by every declaration in trespass where the defendant is called upon to answer for bruising the grass, and even treading upon the soil. If he admits the fact, he is bound to show, by way of justification, that some positive law has empowered or excused him. The justification is submitted to the judges, who are to look into the books, and see if such a justification can be maintained by the text of the statute law, or by the principles of the common law. If no such excuse can be found or produced, the silence of the books is an authority against the defendant, and the plaintiff must have judgment."

The right of search and seizure is very fully and ably discussed in the Boyd case, at page 622 *et seq*.

In *Hibbard* v. *People*, 4 Mich. 125, an act to authorize the issue of a warrant to seize liquor, and retain it to abide the order of the court, to be used in evidence upon a trial, was held to be unconstitutional. This decision was approved in *Robison* v. *Miner*, 68 Mich. 557.

The people of this State, through their legislature, have made ample provisions for the seizure of property in criminal cases, and they are summarized as follows: (1) Personal property stolen, embezzled, or obtained by false pretenses; (2) counterfeit or spurious coin, forged bank notes, or other forged instruments, or any tools, machines, or other materials provided or prepared for making them; (3) obscene matter; (4) lottery tickets; (5) gaming apparatus. Section 9619, 2 How. Stat., provides what shall be done with the articles so seized. These statutes are declaratory of the legislative will upon the subject of search and seizure, and cannot be extended by the courts to include the right to enter the inclosures of private citizens, and seize their lawful property, to be held as evidence against alleged criminals. No intimation is found in any statute of this State, or in any decision of this court, that a prosecutor may cause to be seized the property of third parties, the possession, ownership, and use of which are not prohibited by law, and which are useful and required in the legitimate prosecution of their businesses, and their private inclosures to be entered for that purpose. Such seizures are unwarranted, unreasonable, and prohibited by the Constitution of the United States and of this State. Important as is the proper administration of the criminal law, the power to administer must be exercised with due regard to the constitutional rights of the citizen, among which is the right to the possession and control of his lawful property. Justice Cooley says:

"The only lawful mode of making search upon one's premises is under the command of search warrants, and these are allowed to discover stolen or smuggled goods, or implements of gaming, and in a few other cases, *for which provision must be found in the statutes.* The authority to issue them is liable to great abuses, and the law is justly strict regarding their requirements." Cooley, Torts, 295.

See, also, Cooley, Const. Lim. (6th Ed.) 364-370; 2 Hare, Const. Law, 830; *Potter* v. *Beal,* 49 Fed. 793.

The order of the circuit judge was without authority of law, and must be set aside. The writ will issue.

Long, Montgomery, and Hooker, JJ., concurred with Grant, J.

McGrath, C. J. (*dissenting*). On the 6th day of November, 1895, a boiler situate upon relator's premises, in the city of Detroit, exploded, killing 37 persons. At the time of the explosion a grand jury was in session, and after the explosion said grand jury brought into the circuit court for the county of Wayne an indictment against one Thompson, who was the engineer employed by relator, and in charge of the boiler in question at the time of the explosion, charging said Thompson with manslaughter. The circuit judge, upon application of the prosecuting officers, after hearing counsel for said Thompson and also counsel for relator, directed the police department to take the said boiler and attachments into custody, as exhibits in said matter. Relator afterwards moved to set aside the order. Affidavits were presented on behalf of the people, setting forth that certain parts of the boiler attachments had been taken away, that the grand jury were considering the matter of further indictments relating to said matter, and that the said boiler and attachments were necessary exhibits in the prosecution of said cause. The circuit judge declined to set aside the order, and relator applies for a *mandamus* to compel such vacation.

It is contended on behalf of relator that there is no warrant in law for the order of the circuit judge, and that the order violates section 26 of article 6 of the Constitution, which protects the person, houses, papers, and possessions of every person from unreasonable searches and seizures. A "search warrant" is defined as an examination or inspection by authority of law of one's

premises or person, with a view to the discovery of stolen, contraband, or illicit property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged. 2 How. Stat. § 9615 *et seq.*, authorizes the issuance by a magistrate of search warrants in certain cases. Section 9619 provides that when any officer, in the execution of a search warrant, shall find any stolen or embezzled property, or shall seize any of the other things for which such warrant is allowed, the property and things so seized shall be safely kept, by the direction of the court or magistrate, *so long as shall be necessary for the purpose of being produced or used as evidence on any trial,* and afterwards the stolen or embezzled property shall be restored to the owner, and other things shall be destroyed. Section 9396 provides that when complaint is made on oath to any magistrate that complainant believes that any of the provisions of that act [for the prevention of cruelty to animals] are being violated, or are about to be violated, a search warrant may issue, and under the warrant such officer may arrest the person complained against, and seize and bring in every article or instrument designed or adapted to torture or inflict wounds upon any animal, etc. Section 9290 authorizes indecent books and pictures to be seized and taken. Section 9598 authorizes the disinterment of bodies for the purpose of inquests and *post mortem* examinations. Sections 9472-9475 provide that a magistrate may require a recognizance from witnesses in criminal cases, with sureties, and upon failure to recognize or to give sureties, if ordered, that the witness may be committed to prison.

It is contended that none of these statutes cover the present case, and insisted that there is an absence of authority for the order here made. But these statutes relate to preliminary or initiatory proceedings, and are designed to confer authority upon inferior tribunals, having no general powers. The statute confers upon

circuit courts power to make all orders in any cause pending therein which may be necessary or proper for carrying into effect the jurisdiction vested in such courts by law. Suppose that the attendance of a witness in the trial of a criminal case has been with difficulty procured, and there is danger that he will abscond; has the circuit court no power to secure the attendance of such witness beyond the day? Yet there is no statutory provision conferring such authority, unless it be found in the statute conferring general authority. Suppose that in the trial of a murder case the court deemed it material, in order that the ends of justice be subserved, that the body be exhumed; has the court no power in the premises? Can it be true that a magistrate may commit the relator to prison, and that the circuit court, upon an indictment presented to it, has no authority respecting an article which has been before the grand jury, and which is, in and of itself, criminating evidence? Is an exploded boiler, or the right of property therein, more sacred than the person?

The right of an officer to pursue a fleeing criminal in and upon my premises, and into my dwelling, does not depend upon the statute. There is no statute which authorizes an officer to take from a prisoner such evidence of guilt as may be found on the person,—the bloody knife, the revolver with an empty chamber, garments stained with blood, the shoe or boot which fits the track, the coat with the missing button, the knife with the broken blade, the hat found at the scene of the crime. Such taking and use do not violate the rule that the prisoner shall not be compelled to furnish evidence against himself. It is not only the right, but the duty, of an officer making an arrest to take from the prisoner, not only stolen goods, but any articles which may be of use as proof in the trial of the offense with which the prisoner is charged. Whart. Cr. Pl. & Prac. §§ 60, 61. He may take from the prisoner any articles of property

which it is presumable may furnish evidence against him. 1 Bish. New Cr. Proc. § 210; *Rex* v. *O'Donnell*, 7 Car. & P. 138. This right of sequestration is plain, notwithstanding the property may be claimed by a third party; and stolen goods may be held as against the owner, if necessary for use as evidence, however clear the title of the claimant may be. *Ex parte Hurn*, 92 Ala. 102; *Closson* v. *Morrison*, 47 N. H. 482; *Commercial Exchange Bank* v. *McLeod*, 65 Iowa, 665; *Woolfolk* v. *State*, 81 Ga. 551. The right to impound exhibits, even in a civil case, has been generally exercised by the courts, and the right to hold articles found in possession of a person charged with crime is not limited to such as are supposed to be stolen, but extends to evidentiary articles. It is not the fact that there is a contest over the ownership of stolen goods that gives the people the right to retain them, but rather that they are of the *res gestæ* and evidential. The prisoner's consent does not give the owner the right of possession, as against the people.

The right to the possession and enjoyment of property must be subordinated to the law of overruling necessity. It is subject to the necessary burdens and restrictions imposed by the general police power of the State, in order to secure the general comfort, health, security, and protection of the citizen. The limitations upon the police power and its execution do not embrace such reasonable judicial orders as may be found necessary, in the course of the administration of the criminal law, for the detention of witnesses and the preservation of evidence. Police officers must be given a reasonable latitude in the pursuit of offenders, the detection of crime, and the collection of evidence; and the courts vested with jurisdiction to try such offenders must be allowed to exercise a reasonable discretion respecting the preservation of the evidence of crime in matters before them. The principle of the rule that permits the traveler upon the highway to

107 MICH.—37

go upon the abutting land when the highway is impassable; that permits entry upon my premises in case of fire, and the destruction of my property, if deemed necessary to stay the conflagration; that permits the inspector to enter my close,—extends to measures necessary for the prevention of crime, the detection, pursuit, and arrest of offenders, and the preservation of criminating evidence. All are matters not alone of individual interest, but of public concern.

The cases of *Entick* v. *Carrington*, 19 Howell, St. Tr. 1029, 2 Wils. 275; *Boyd* v. *U. S.*, 116 U. S. 616; and *Potter* v. *Beal*, 49 Fed. 793,—are cases of paper searches and seizures, and involve the right of the government to invade private premises and search among private papers for evidences of crime, and the right to compel the production of one's own private papers in a criminal prosecution as evidence against himself. *Entick* v. *Carrington* was one of a series of cases of trespass, in which defendants attempted to justify under a warrant issued by the Earl of Halifax. The court held that the warrants were wholly without authority and void. The cases are fully discussed in Cooley, Const. Lim. (6th Ed.) p. 364, note.

*Boyd* v. *U. S.* was an information in a case of seizure and forfeiture of property against 35 cases of merchandise seized as forfeited under the revenue laws. At the trial it became important to show the value of a previous invoice of 29 cases of the same class of merchandise. The district judge made an order requiring the production of the invoice of the 29 cases. The claimants, in obedience to the order, produced the invoice, under objection. When the invoice was offered in evidence, claimants objected to its reception on the ground that in a suit for forfeiture no evidence could be compelled from the claimants themselves, and that the statute, so far as it compelled the production of such evidence, was unconstitutional. The question which addressed itself to the court, as stated by Mr. Justice Bradley, was whether "a

search and seizure, or, what is equivalent thereto, a compulsory production of a man's private papers, to be used in evidence against him in a proceeding to forfeit his property for alleged fraud against the revenue laws,—is such a proceeding for such a purpose an 'unreasonable search and seizure,' within the meaning of the fourth amendment of the Constitution, or is it a legitimate proceeding?"

*Potter* v. *Beal* was a proceeding in equity against a bank receiver to recover the possession of certain private and personal books, papers, and other documents in a certain trunk, which was in the bank vault when the bank was closed by order of the comptroller. The relief sought was an order that the books, papers, and other documents be delivered to plaintiff, and that defendant be enjoined from using the same before the grand jury. Defendant answered that the trunk came into his possession as assets of the bank; that it was his duty to examine the contents thereof, and ascertain whether it contained property of the bank, or *memoranda,* books, papers, or accounts concerning its affairs. The district attorney, appearing, was permitted to intervene, and make a motion asking for such an order as would lay the papers before the grand jury. The court held that plaintiff was entitled to speedy possession of his private and confidential papers, but that the bank was entitled to know what was taken from its vaults, and referred it to a master, with directions to open the trunk, and, after examination, to deliver to defendant such papers, documents, and other things as were the property of the bank, and were not material to the issue; to deliver to plaintiff such as were private and were not the property of the bank, together with such as related to the bank transactions, and were necessary and material to be introduced by Mr. Potter in his own behalf; and that such as were not included in the two classes named, as related to bank transactions, and, in the judgment of the

master, were or might be material to the issue suggested in the motion of the district attorney and the government's case, should be sealed and returned to the trunk and the safe custody of the clerk, who should relock the trunk, return the key to the counsel for plaintiff, but hold the trunk and contents.

These cases do not hold that all searches and seizures are unreasonable. They do hold that the invasion of the privacy of one's home, and the seizure of private papers and documents, is an unreasonable search and seizure, and is within not only the article of the Constitution prohibiting unreasonable searches and seizures, but also the article that no person shall be compelled to give evidence against himself. The rule is, however, that forged documents, or such as are unlawfully held or unlawfully used, are subject to seizure. In *Langdon* v. *People*, 133 Ill. 382, a complaint was made by the State's attorney that one P. R. Langdon had forged an official certificate, and that complainant verily believed that such certificate was concealed in the office lately occupied by said Langdon. Thereupon a search warrant was issued, and the forged certificate brought before the justice who issued the warrant. The court held that the certificate was not a private paper, within the rule of *Boyd* v. *U. S.;* that it was a forged paper; and that it was unlawful for plaintiff in error to have it in his possession.

In *Com.* v. *Dana*, 2 Metc. (Mass.) 329, the court, speaking of the constitutional provision relating to searches and seizures, say:

"This article does not prohibit all searches and seizures of a man's person, his papers, and possessions, but such only as are 'unreasonable,' and the foundation of which is 'not previously supported by oath or affirmation.' The legislature were not deprived of the power to authorize search warrants for probable causes, supported by oath or affirmation, and for the punishment or suppression of any violation of law. The law, therefore,

authorizing search warrants in certain cases, is in no respect inconsistent with the declaration of rights."

Mr. Cooley, in his Constitutional Limitations (6th Ed., p. 370), says that the warrant is not allowed for the purpose of obtaining evidence of an intended crime, but only after lawful evidence of an offense actually committed; nor even then is it allowable to invade one's privacy for the sole purpose of obtaining evidence against him, except in a few special cases, where that which is the subject of the crime is supposed to be concealed, and the public or the complainant has an interest in it or in its destruction. In a note the author says:

"We do not say that it would be incompetent to authorize by statute the issue of search warrants for the prevention of offenses in some cases; but it is difficult to state any case in which it might be proper, except in such cases of attempts or of preparations to commit crime as are in themselves criminal."

The present case is not one where it is sought to compel relator to produce evidence against herself, for she is not the person charged; and, even if she were, the use of the boiler as evidence cannot be distinguished from any case where the instrument causing the death is produced, although taken from the prisoner, or found in defendant's apartments. Nor is this a case where any attempt has been made to invade private premises for the discovery of evidence of crime. An explosion had occurred, and 37 persons had lost their lives in consequence. The matter was submitted to the grand jury, and they have brought in, and presented to the court making the order complained of, an indictment against the person in charge of the boiler at the time of the explosion, charging him with criminal carelessness with respect to the care and management of the boiler. It is insisted that the boiler, in and of itself, is evidence of the causes which led to the explosion, and of the carelessness of the management. It is true that in counsel's brief it is said that

the relator "may be subjected to suits by persons who received injuries by the destruction of the building;" but there is no good reason why the police authorities, whose mission is in part the protection of property, cannot in this particular case be intrusted with the preservation of the *status quo* of this property, especially as the same is held under an order of the court, and subject to its direction.

It frequently happens that animals affected with infectious diseases are killed by the public authorities to prevent the spread of the disease; and if the poor man's team had been stolen, and taken from the thief, the necessity for its use would not necessarily determine the owner's right to its possession. If, in a partially burned building, there were found a package of combustible material saturated with kerosene, would there be any question of the right of the authorities to take and preserve the package for use as evidence? Illustrations of what might readily be held to be unreasonable seizures could be multiplied without effort, but they would be without force. The prohibition is against unreasonable seizures, and all seizures are not regarded as unreasonable. The question here is whether this is an unreasonable seizure. Relator's contention is that any impounding of any of her property for the purpose named is unwarranted. Because a man may not be put out of his own house, it does not follow that a revolver or a steel drill or a knife may not be sequestered for use as evidence in a criminal proceeding. Because a man's team with which he earns a livelihood, which has been used by another to convey away stolen goods, may not be impounded, it does not follow that the *status quo* of an exploded boiler, the negligent use of which, resulting in the death of 37 persons, is charged as manslaughter, concerning which no claim is made of a desire for its use, and which in fact does not appear to be other than useless, except for scrap iron, may not be preserved for use

as evidence upon the trial of the offense charged, espe-
cially as it is claimed by the record here that the police
authorities have, since the explosion, been endeavoring
to exercise a certain surveillance over it, and in that
endeavor a conflict between police officers, counsel for
the accused, and the owner has arisen, and certain of the
connections of the boiler have been spirited away.

It is urged that some common or statute law authoriz-
ing such a seizure should be pointed out. The cases re-
ferred to sustain the right to hold evidentiary articles,
irrespective of the question of ownership, and as against
the owner; and no case can be found which disputes this
right, or intimates that such articles cannot be seized
and impounded, where the rules referred to in the Entick
and Boyd cases are not infringed. Those cases do not
intimate that a search warrant may not issue in a proper
case for the discovery and seizure of evidences of crime.
The officers of the law, to whom is committed the pre-
vention and detection of crime and the collection of
criminating evidence, are daily committing acts for
which there is no express authority in the statutes, or
elsewhere in the books. In the recent notorious Holmes
cases,[1] the officers of the law, in their efforts to secure
criminating evidence, entered upon private property, and
excavated under cellar floors and elsewhere, and no one
raised any question as to the right so to do. Such acts
are generally regarded as demanded by public necessity,
in the interest of good morals and the detection and pun-
ishment of crime,—matters of public concern, to which
the right of the owner to immediate possession of his
property must at times be subordinated.

The police authorities certainly had the undoubted
right to make an investigation under the direction of the
prosecuting officers. Upon the presentation of the in-
dictment, the court making the order obtained jurisdic-

[1] See *Com.* v. *Mudgett, alias Holmes,* 4 Pa. Dist. R. 739, 174 Pa.
St. 211.

tion of the matter. It cannot be said that the court would not have the power, had it been found necessary, to compel witnesses to give sureties for their appearance, or to commit them on refusal so to do. If this be true, can it be seriously contended that this exploded boiler cannot be impounded? The court might in such case order the witness into custody, although not before the court. While the order here was not technically a search warrant, yet it was in the nature of one, omitting the direction to search, and directing the officer to take into custody an article which was fully identified, and admitted to be the one with respect to which the criminal carelessness is charged, and the explosion of which is conceded to have been the cause of the loss of life. It was its unlawful use that is alleged to have produced the result. The possession is that of the court, and is but temporary. If it be claimed that the deprivation of the use is a serious inconvenience, the court may be appealed to, and possibly some means may be devised to preserve the evidence and release the property; but that is a matter which should be addressed to the judgment and discretion of the court making the order.

The writ should be denied.