## UNITED STATES v. FRIEDBERG.

(District Court, E. D. Pennsylvania. June 12, 1916.)

No. 4184.

1. SEARCHES AND SEIZURES ⊜⇒7—DOCUMENTS UNLAWFULLY TAKEN—RETURN.
   The rule that, upon trial of a criminal prosecution, the courts will not, as to evidence clearly competent, reject it because of the means by which it was procured, does not apply to a petition before trial for return of papers seized upon an unlawful search.

   [Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. ⊜⇒7.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SEARCHES AND SEIZURES ☞7—UNLAWFUL SEARCH—RETURN OF PAPERS.
    Const. U. S. Amend. 4, declares that the right of the people to be secure
    in their persons, houses, papers, and effects against unreasonable searches
    and seizures shall not be violated, and no warrants shall issue but upon
    probable cause, supported by oath and affirmation, and particularly de-
    scribing the place to be searched and the persons and things to be seized.
    Amendment 5 declares that no person shall be compelled in any criminal
    case to be a witness against himself.  Under a search warrant authorizing
    the search of petitioner's place of business for leaf tobacco, as to which
    it was claimed a fraud upon the internal revenue laws was being effected,
    petitioner's private papers, both at his place of business and at his resi-
    dence, were examined and seized.  Before the trial on the charge of vio-
    lating the internal revenue laws petitioner demanded return of such pa-
    pers.  Held, that the search was unreasonable and the papers should be
    returned, though desired for use in the prosecution; the warrant not de-
    scribing petitioner's residence, nor providing for search and seizure of
    private papers.

    [Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5;
    Dec. Dig. ☞7.]

Morris Friedberg was charged with violating the internal revenue
laws.  Upon petition and rule for order on United States agents to
return books and papers.  Rule absolute.

John H. Hall, Asst. U. S. Atty., and Francis Fisher Kane, U. S.
Atty., both of Philadelphia, Pa.

Pierce Archer, Jr., of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.  The books and papers, which are
the subject of the present rule, were seized by internal revenue officers
of the United States under a search warrant issued by a United States
commissioner which reads as follows:

"Commissioner's Court of the United States Eastern District of Pennsylvania.

"Search Warrant.

"To H. C. Dietterich, Internal Revenue Officer of the United States, and to his
    Deputies, or Any of Them—Greetings:

"Whereas, complaint on oath, and in writing, has been made before me,
Charles Welsh Edmunds, a United States commissioner for the Eastern dis-
trict of Pennsylvania, by H. C. Dietterich, alleging that he has reason to be-
lieve and does believe that a fraud upon the revenue of the United States is
being committed upon the revenue law as to leaf tobacco, has been and is being
committed by person or persons unknown upon the premises known as 234
North Third street, Philadelphia, in the Eastern district of Pennsylvania.

"You are therefore hereby commanded, in the name of the President of the
United States, to enter said premises, with the necessary and proper assist-
ance, and there diligently investigate and search said premises for the said
leaf tobacco, as also for the ingredients thereof and utensils used in the manu-
facture of same, and that you secure the same and bring the person or persons
in whose custody they may be found before me in my office in Philadelphia,
then and there to be examined and further to be dealt with according to law.

"Given under my hand and seal on this twenty-fourth day of March A. D.
1916.                                    Charles Welsh Edmunds,
    "United States Commissioner, Eastern District of Pennsylvania."

The warrant was apparently issued under the provisions of section
3462, Revised Statutes (Comp. St. 1913, § 6364).  The facts in con-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nection with the search and seizure are set out in the petition for the rule and are not denied. Briefly stated, they are as follows:

On the 24th day of March, 1916, the revenue officers, during the absence of the petitioner, made a search of the petitioner's office, his private desks, his files, and his safe at the premises 234 North Third street, named in the warrant, and compelled the petitioner's clerk to disclose and deliver to them all the petitioner's private papers and books, including his private correspondence, files, bills of lading for tobacco shipped to him, certificates of tobacco in bonded warehouses, his daybook, ledger, invoice book, sales book, cashbook, memorandum books, bills, and many other papers having to do only with the petitioner's private and financial transactions, and these books and papers were gathered together and carried away with them. On the following day, two of the revenue officers gained access to the petitioner's private residence at No. 1516 Moyamensing avenue, violated the privacy of his dwelling and family, searched the entire house, including the bedrooms of the female members of his family, and carried away a leather suit case packed with his private papers. The revenue officers brought all the articles to the Federal Building, and, in spite of the petitioner's protests and requests, have answered that all the books and papers were in the custody of the United States, have refused to give them back, and have informed the petitioner that the books and papers were to be used as evidence against him and others for the purpose of placing him under arrest for a crime against the United States and for forfeiting his property.

On April 27, 1916, the petitioner was placed under arrest upon a warrant based on an information sworn to by one of the revenue officers for certain violations of the internal revenue laws and was held in bail for a hearing. The petitioner claims that the search and seizure were in violation of his rights under the Fourth and Fifth Amendments to the Constitution, and prays for an order for the return of the books and papers.

[1, 2] The respondents appeared by the United States attorney in answer to the rule. The Fourth Amendment declares that:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment, among other things, declares that no person "shall be compelled in any criminal case to be a witness against himself." The Fourth Amendment makes clear the constitutional requirements of a search warrant. It provides that the warrant shall particularly describe, first, the place to be searched; and, second, the persons or things to be seized. The warrant describes the place to be searched as 234 North Third street, Philadelphia, and the thing to be seized as "leaf tobacco, the ingredients thereof, and utensils used in the manufacture of the same." The warrant did not describe the petitioner's private residence at No. 1516 Moyamensing avenue; neither did it describe any books or papers of the petitioner.

The present rule is not to be determined upon the authority of the cases holding that, upon objection to the introduction of testimony clearly competent as tending to establish the guilt of one on trial for a criminal offense, the courts do not stop to inquire as to the means by which the evidence was obtained. So that, if evidence is obtained by means of a search warrant, the fact that, in the search for what was lawfully included within its terms, other papers which are incriminating are incidentally taken, the court will not, where the question is first raised at the trial, inquire into the method by which the prosecution came into the possession of the incriminating documents. This is the rule, as I understand it, laid down in the case of Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575.

The question now before the court is not as to the admission of evidence, but as to whether the books and papers have been unlawfully seized in violation of the constitutional rights of the defendant. As stated by Mr. Justice Day in the opinion in the Adams Case, the question there was not raised in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, and it was stated that the question solely was:

"Were the papers found in the execution of the search warrant, which had a legal purpose in the attempt to find gambling paraphernalia, competent evidence against the accused?"

I think the question as to what is an unreasonable manner of search and seizure, where the question is raised, as here, in resisting a seizure of papers by demand for their return, must be determined by the terms of the Fourth Amendment itself, which provides the requisites for a warrant. A search, to be lawful, and therefore reasonable, must be confined to the place, and the seizure to the things, particularly described. If it were not the case that the place to be searched and the things to be seized must be those particularly described, the effect would be that a search warrant providing for the search of a particular place and the seizure of particular things would become a general warrant when placed in the hands of the government officers. The history of the Fourth Amendment by Mr. Justice Bradley in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, is reviewed in the opinion of Mr. Justice Day in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and, as there shown, it took its origin in the determination of the framers of the amendments to provide for the Constitution a Bill of Rights, securing to the people those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were then permitted under general warrants issued under the authority of the government. By this practice there had been invasions of the home and privacy of the citizens and seizure of their private papers in support of charges, real or imaginary, made against them, and it is stated in the opinion that such practices had also received sanction under warrants and seizures under the so-called writs of assistance, issued in the American colonies. The emphasis which is laid upon the wrongs permitted under general warrants indicates that it was not the intention of the framers

of the amendment to permit, under a warrant particularly describing a place and things, a search of other places and a seizure of other things than those particularly described. As was said by Mr. Justice Bradley in the Boyd Case, the essence of the offense against the constitutional amendment "is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense."

The rights of the petitioner in this case have not been forfeited by conviction, and, as in the case of Weeks v. United States, without awaiting his trial, he has made timely application to the court for an order for the return of his books and papers. In the Weeks Case the papers had been seized by the United States marshal without a warrant upon sworn information and without describing with reasonable particularity the thing for which the search was to be made, so that the question differed from that presented here, in that here the officers of the United States were acting under a warrant lawfully issued. To the extent that the execution of the warrant came within its particular terms, the petitioner is entitled to make no complaint and makes none. I think the question as to whether the seizure in the present case of the private papers of the petitioner is unreasonable as to the subject of seizure is answered in the case of Boyd v. United States:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ toto cœlo. In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government."

"When examined with care, it is manifest that there is a total unlikeness of these official acts and proceedings to that which is now under consideration. In the case of stolen goods, the owner from whom they were stolen is entitled to their possession; and in the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation, or to pursue and drag them from concealment. * * * Whereas, by the proceeding now under consideration, the court attempts to extort from the party his private books and papers to make him liable for a penalty or to forfeit his property."

In the Boyd Case, the court, through Mr. Justice Bradley, cites and reviews Lord Camden's criticism of the power claimed by the Secretary of State for issuing general search warrants. As Lord Camden says in his opinion:

"Our law has provided no paper search in these cases to help forward the conviction."

Mr. Justice Bradley says:

"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employés of the sanctity of a man's home and the privacies of life."

In so far as the revenue officers searched the premises at 1516 Moyamensing avenue and seized books and papers there, they were acting without the authority of any warrant describing the premises or the things there seized and in violation of law. The books and papers seized at the premises 234 North Third street were not and could not be claimed to be within the description of the "things to be seized" upon those premises.

The government seeks to justify the seizure entirely upon the ground that the papers are to be used as evidence upon which the government intends to prove the guilt of the defendant in a criminal prosecution and to forfeit his property in the proceedings in rem contemplated under section 3453. The papers seized are not forfeitable, and hence not subject to seizure. In the seizure, the revenue officers were acting clearly beyond the authority of the warrant, without authority of law, and in violation of the petition's constitutional rights. The exigency of necessity for obtaining evidence in a particular case does not justify the tendency which has grown up to proceed by "raid" of the house and property of a supposed offender, rather than by the orderly process provided by law and guaranteed by the Constitution.

The rule will be made absolute.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes