# RITCH *v.* MASONS FRATERNAL ACCIDENT ASSOCIATION OF AMERICA.

*Simmons, C. J.*—1. Where a policy of accident insurance contained a stipulation in these words: "No legal proceedings for recovery hereunder shall be brought until the expiration of three months after receipt by the association of acceptable proofs of loss, and the association shall not be required, in case of a disagreement between the certificate holder and the beneficiary and the association as to liability, to arbitrate the question of liability, as by the rules of this association it is provided, and no suit shall be brought at all, and the said association shall not be bound to arbitrate at all, unless the said suit is brought or such arbitration is in writing demanded within one year from the date of the alleged accident, and no suit shall be brought in any case except to enforce payment of the award of the said arbitrators, unless the association refuse to arbitrate": *Held*, that whether the requirement that "no suit shall be brought in any case except to enforce payment of the award of the said arbitrators, unless the association refuse to arbitrate," was or was not reasonable, an action brought by the insured after more than one year from date of the alleged accident, he having made no demand for an arbitration, was too late.

2. If in any event "overtures for a settlement" or "promises to pay" on the part of the company, or "negotiations" between it and the insured for a settlement, can have the effect of extending the time within which the plaintiff may commence his action beyond the conventional limit prescribed by the policy, there was nothing in the facts of the present case to constitute an exception of this kind, and it does not appear that there was any conduct on the part of the company which should have deterred the plaintiff from bringing his action within the year.                *Judgment affirmed.*

May 19, 1896.  By two Justices.  Argued at the last term.

Action on accident insurance policy. Before Judge Harris.   City court of Floyd county.   March term, 1895.

The suit was brought November 24th, 1893.   The policy was dated October 13, 1892.   It stipulated, that the association would pay $1,000 "if the certificate-holder shall lose a hand above the wrist or foot above the ankle, as the result of accident, such accident as is above set forth, during the life of this certificate."   It contained also the stipulation quoted in the first head-note.   The accident was alleged to have occurred on or about November 21, 1892, by which petitioner lost a foot above the ankle.   It was alleged that defendant had paid him on account of the accident $500, and refused to pay the remaining $500. The judge directed a verdict for defendant.   This ruling is assigned as error, the plaintiff contending that it was shown by the evidence that negotiations had never been finally concluded between defendant and himself or his attorney, with regard to a settlement of the amount claimed, nor had defendant ever reached final decision or made positive refusal to settle the claim of loss; that the defendant had paid one half of the claim in March, 1893, and hence the twelve months limitation could not commence to run until that date; that it could not commence to run until negotiations of settlement had been terminated between the parties and a final decision or refusal had been made by defendant to plaintiff's demand for payment, and such final refusal never was made by defendant; that the evidence fails to disclose that defendant ever refused to arbitrate, and hence the policy did not set up such a statute of limitations, as to one year's time, as could in any particular affect or control the bringing of this suit, as against the general statute of limitations in force by the laws of Georgia; and that it is not the policy of our law to permit or allow insurance companies to establish special clauses of limitation, that will contravene or change the general limitation laws of Georgia.

8

The following appears from the evidence: Plaintiff's wife had some chickens, and a hawk had been catching them. Plaintiff borrowed a breech-loading gun from a neighbor, two days before the accident, and loaded it to kill the hawk. After so loading he took the gun and "drew a bead" on a knot in the front door of his house, when his two-year-old child shoved a chair, so that probably the back of the chair struck the plaintiff's right arm, when he started to throw the gun down from his face, his finger being on the trigger, and the gun was discharged, the load going down through his ankle and necessitating amputation of the foot above the ankle. Plaintiff owned no gun and had no firearms in the house. The accident occurred November 21, 1892. The agent of defendant, through whom plaintiff had obtained the policy, came out and investigated the accident. Within ten days after the accident plaintiff in writing gave notice of it to defendant. Defendant answered at once, sending blank proofs of loss, which were filled out by plaintiff and sent to defendant. There was considerable correspondence between them. On March 1, 1893, defendant wrote to plaintiff saying: "One of the reasons we have been waiting was to have you state that your foot has been amputated above the ankle, as your claim blank did not state that fact. We presume, however, from your letter, that it was, and in accordance with that belief we enclose check for $500." The check or draft was dated March 1, 1893, and was drawn on a bank in Massachusetts. Accompanying it was a receipt of the same date, which purported to be in full payment of the claim. Plaintiff refused to receive the draft in full payment, but the word "full" as printed in the original receipt was erased and the word "part" interlined, and the words "balance still unpaid $500" and "the above receipt is for one half of the whole claim" were written in the receipt by plaintiff's attorney before cashing the draft. Plaintiff received the draft by mail, but did not draw the

money when he received it.   He notified defendant in writing that he would hold the draft and not collect it in full settlement.   There was considerable correspondence. On March 16, 1893, defendant acknowledged the receipt of letter written on behalf of plaintiff, notifying it that the $500 was not accepted by plaintiff in full settlement, and that plaintiff was advised to hold up the draft and receipt until defendant was heard from.   In this letter of March 16, 1893, defendant claimed that plaintiff came under a clause in the certificate as to "hunting for pleasure or profit."   On March 23, 1893, a letter was written for plaintiff to defendant, acknowledging the receipt of the above letter, and claiming that at the time of the injury plaintiff was not a hunter for pleasure or profit nor engaged in hunting either for pleasure or profit, and that he was entitled to full payment of the indemnity.   The last letter appearing in the record was a letter from defendant to plaintiff's attorney, in reply to the letter last above mentioned, insisting that plaintiff was hunting for both pleasure and profit.   This letter was dated April 4, 1893, and concluded:   "Trusting I have made this matter plain and satisfactory to you and awaiting your further favors, I remain, etc."   The draft and receipt as altered were attached together.   On April 11, 1893, it was placed to the credit of Mr. Hoskinson (who had accounted to plaintiff for the $500 and taken therefor the draft) in a bank in Rome, and the draft was collected through this bank.   It would not take more than from five to seven days for collecting a draft on the bank in Massachusetts.

*Reece & Denny*, for plaintiff.
*McHenry, Nunnally & Neel*, for defendant.