# THE STATE v. WILLIAM LOCK and ANNA LOCK, Appellants.

### In Banc, February 11, 1924.

1. **SEARCH WARRANT: Probable Cause.** The words "probable cause" used in Section 11 of Article 2 of the Constitution, declaring that "no warrant to search any place . . . shall issue . . . without probable cause, supported by oath or affirmation reduced to writing," mean the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged is guilty of the crime for which he is to be prosecuted. Probable cause is a mixed question of law and fact; whether the facts and circumstances stated show probable cause is a question of fact to be found by the jury, but whether sufficient facts have been stated from which probable cause may be inferred is a question of law, to be determined by the court.

2. ———: ———: **On Belief: Evidence.** The sworn statement of the prosecuting attorney, upon which the search warrant is grounded, in which he states that he "verily believes" that in a named residence "intoxicating liquors are manufactured," without stating any facts or circumstances upon which said belief is based, does not state facts from which probable cause may be judicially inferred, and does not authorize the issuance of a warrant to the sheriff to search said residence, and such search and the seizure of articles in pursuance to the warrant are illegal, and the things discovered by the illegal search cannot be used as evidence in the prosecution of the defendant.

3. ———: ———: **Statute: Judicial Function.** Notwithstanding Section 6595, Laws 1921, p. 416, declaring that "no warrant shall be issued to search a private dwelling house occupied as such . . . unless such residence is . . . a place in which intoxicating liquors are manufactured," the question of the existence of a probable cause is a judicial function, to be determined by a court of competent jurisdiction only, and unless such question is submitted to the court, a search warrant, issued upon the sworn statement of the prosecuting attorney alone, is illegal, and the search of the dwelling house made in pursuance thereto by the sheriff is likewise illegal. The statute, in this respect, does not measure up to the constitutional requirement, that there must be "probable cause" to be judicially determined, and that the search warrant must be "supported by oath or affidavit reduced to writing" in which are set forth facts and circumstances sufficient in the opinion of the court to constitute probable cause.

4. ———: **Description of Place.** The words of the Constitution declaring that "no warrant to search any place . . . shall issue without describing the place as nearly as may be" permit a search to be made only when the search warrant describes the place to be searched with particularity; the description should identify the property with sufficient clearness and certainty that no mistake ensue. A warrant which commands the sheriff "to enter the building known as residence, dwelling house, barn and all outbuildings, car, vehicle, and premises, farm owned, occupied or under the control of Bill Lock, Webster County, Missouri," does not contain a sufficient description of the place to be searched.

5. ———: **Affidavit: Confused Wording.** A search warrant and affidavit whose paragraphs are disconnected and so inartificially drawn that they are meaningless unless judicial construction supplies words, are insufficient.

6. ———: **Consent: Waiver.** Where the sheriff and his deputies knock at the door of defendant's home, read a search warrant to him and inform him that they have come to search the premises, there is implied coercion, and there is more than coercion where the search warrant commands the sheriff, if necessary, to enter by force; and in such case there is no element of consent or waiver.

7. ———: **Illegal: Evidence: Motion to Suppress: Collateral Issue.** The motion to suppress as evidence articles obtained by illegal search, under a void search warrant, is not a collateral issue, but if made before trial raises an original and independent issue; and when the search warrant is void, because the constitutional requirement as to the existence of probable cause is not observed, or is void for other reasons, the motion to suppress as evidence the articles obtained by the illegal search should be sustained, and the evidence thus obtained excluded at the subsequent trial. Courts established to administer justice and to enforce the laws of the State will not receive, over the objection of the accused, evidence obtained by a public officer in violation of law for the purpose of securing the conviction of an alleged offender. Any other course would be to whittle away the constitutional guaranty against unreasonable search and seizure, and would also compel defendant to testify against himself. [Distinguishing State v. Pomeroy, 130 Mo. 489, and State v. Sharpless, 212 Mo. 176, wherein the right of a public officer, after having made a lawful arrest without a search warrant, to search the person of the accused or the room previously occupied by him, and to seize, and to use at his trial as evidence of the crime charged against him, forged papers, lottery tickets and other contraband articles thus discovered, was announced, and is approved, but disclaiming the *obiter* announce-

302 Mo. Sup.—26.

ment therein that "the illegality of the search warrant was no good reason for excluding papers seized as evidence."]

8. ———: Conviction. Where the only evidence relied upon by the State to convict defendant was obtained by an illegal and void search warrant, and he filed a timely motion to suppress such evidence, a conviction cannot stand.

Appeal from Webster Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED.

*G. S. Dugan* and *Seth V. Conrad* for appellants.

(1) To prevent the introduction of testimony secured by reason of an illegal and void search warrant, the question must be raised by motion to quash such search warrant and to suppress testimony procured thereby, and not by objection to introduction of testimony. State v. Pomeroy, 130 Mo. 489; People v. Adams, 48 Law Ed. 575; United States v. Weeks, 58 Law Ed. 657. (2) The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue without probable cause, supported by oath or affirmation, and the place to be searched, and the person or thing to be seized, must be particularly described. Fourth Amendment of U. S. Constitution; Sec. 11, Art. 2, Mo. Constitution; Bram v. United States, 168 U. S. 532; Weeks v. United States, 232 U. S. 391, 58 Law Ed. 656; United States v. Wong, 94 Fed. 834. (3) No party can be compelled in a criminal case to be a witness against himself; nor can he be deprived of life, liberty or property without due process of law. Fifth Amendment of U. S. Constitution; Sec. 23, art. 2, Mo. Constitution; United States v. Rykowski; 267 Fed. 866; United States v. Slusser, 270 Fed. 819. (4) The statute under which the affidavit was filed and search warrant was issued in this case provides only for the search of a building or structure. And provides fur-

ther that no warrant shall be issued to search a private dwelling house occupied as such, unless upon application to the court good reason is shown that such place is used for the purpose of violation of law, or unless such residence is a place of resort, or a place where intoxicating liquors are manufactured. Laws 1921, sec. 6595, p. 416. (5) The purported affidavit upon which the warrant was based was fatally defective because it contained the statement of no fact from which probable cause could be inferred. Laws 1921, sec. 6595, p. 416; Veeder v. United States, 252 Fed. 418; United States v. Kelih, 272 Fed. 484.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1) It was not error to permit the sheriff and his deputies to testify to the articles found on the premises of appellants, and to permit the introduction in evidence of such articles. State v. Sharpless, 212 Mo. 200; State v. Pomeroy, 130 Mo. 500; State v. Kramer, 206 Mo. App. 54; State v. Pope, 243 S. W. 254. (2) This cause should be transferred to the Springfield Court of Appeals, for the reason that the offense charged is a misdemeanor and no constitutional question has been properly raised. Secs. 2411, 4107, 4108, R. S. 1919; State v. Swift & Co., 270 Mo. 694; Lohmeyer v. Cordage Co., 214 Mo. 685; Littlefield v. Littlefield, 272 Mo. 163; State v. Gamma, 215 Mo. 100.

DAVIS, C.—On the 8th day of November, 1921, the Prosecuting Attorney of Webster County filed an information, consisting of two counts, in the circuit court. The first count, in substance, charged William Lock and Anna Lock, appellants, with having in their possession a still, etc., used and fit for use in making intoxicating liquor. The second count charged them with having intoxicating liquor in their possession.

The appellants were convicted, upon trial, before the court and a jury, upon evidence obtained in the execution

of a search warrant issued by the circuit clerk in pursuance to an affidavit filed by the said prosecuting attorney, in the office of said circuit clerk, directed to the sheriff of said county, commanding him to search the residence, other buildings and premises, owned, occupied or under the control of Bill Lock, in Webster County.

The sworn statement of the prosecuting attorney is herewith set forth:

"STATEMENT OF PROSECUTING ATTORNEY.

"To the Clerk of the Circuit Court of Webster County, Missouri: "I, J..P. Smith, Prosecuting Attorney duly elected, commissioned, sworn, qualified, installed and acting as such in and for the County of Webster, in the State of Missouri, state that I verily believe that in the building known as the residence, dwelling, barn, and outbuildings, and the premises, and farm owned and under the control of Bill Lock, and buggy vehicles, carriages, automobile owned and under control of the said Bill · Lock, on or off ·said premises and farm, in Webster County, Missouri, as affiant verily believes intoxicating liquors were being manufactured, sold and kept contrary to the provisions of Article VII of Chapter 52 of the Revised Statutes of Missouri, 1919, and as amended by the acts of the Legislature of 1921;

"And further as affiant verily believes that in said building or buildings on said premises and farm above described is used, kept, still, doubler worm, worm tub, mash tub, fermenting tub, vessel, and fixtures used and fit for use in the manufacturing and producing intoxicating liquors, said dwelling house is a public resort, and a place in which intoxicating liquors are manufactured, as affiant verily believes, contrary to Article VII of Chapter 52 of the Revised Statutes of Missouri, 1919, and as amended by the Acts of the Legislature of 1921, contrary to law.

"J. P. SMITH, Prosecuting Attorney.

"Subscribed and sworn to before me this 4th day of November, A. D. 1921. Witness my official hand and the seal of my office.

"R. A. CORBETT, Circuit Clerk,
"By MARION CORBETT, Deputy.

"CIRCUIT COURT SEAL:
"Webster County, Mo.
"FILED: Nov. 4, 1921.
"R. A. CORBETT, Circuit Clerk."

The search warrant, issued by the circuit clerk and the return thereon, by the sheriff, is as follows:

"SEARCH WARRANT:   (Liquor Cases).

"State of Missouri, ⎫
                    ⎬  ss
County · of Webster, ⎭
"The State of Missouri to the Sheriff ·
of Webster County, GREETING:

State v. Lock.

"Whereas, J. P. Smith, Prosecuting Attorney of Webster County, Missouri, on the 4th day of November, 1921, filed a statement in my office verified by his oath, in which he says that he verily believes that intoxicating liquors are being manufactured, kept and sold contrary to provisions of Article VII of Chapter 52 of the Revised Statutes of Missouri, 1919, and amended by the Acts of the Legislature of Missouri, 1921, and that in said buildings hereinafter described are used, kept, still, doubler, worm tub, mash tub, fermenting tub, vessel, and fixtures used and fit for use in the manufacturing and producing intoxicating liquors, contrary to Article VII of Chapter 52 of the Revised Statutes of Missouri, and as amended by the Acts of the Legislature of Missouri, 1921, in the building known as the residence and dwelling, barn and outbuildings, cars, vehicles, wagons and premises owned or occupied and under the control of Bill Lock, in Webster County, Missouri, contrary to law.

"This is therefore to command you, in the name of the State of Missouri, to enter by force, if necessary, the building known as the residence, dwelling house, barn and all outbuildings, car, vehicles, and premises, farm owned, occupied or under the control of Bill Lock, in Webster County, Missouri, and if any intoxicating liquors, malt, mash, or other grain or fruit products, fermented to such point as to be unfit for any use save in the manufacturing of intoxicating liquors, any still, doubler, worm, worm tub, mash tub, fermenting tub, vessel or fixtures, and any sugar or syrup, hops, raisins, and other fruits, and grain of any kind, fit for use in the manufacturing of intoxicating liquors.

"You are hereby commanded to take and hold such property until all prosecutions for violating the provisions of Article VII of Chapter 52 of the Revised Statutes of the State of Missouri, and amended by the Acts of the Legislature of 1921, to be found therein to hold the same as above directed.

"In witness Whereof, I have hereunto set my hand as Clerk of the Circuit Court of Webster County, and affixed the seal of said Court at my office, this 4th day of November, A. D. 1921.

"R. A. CORBETT, Circuit Clerk.
"By MARION CORBETT, Deputy.

"CIRCUIT COURT SEAL:
Webster County, Mo.

"RETURN

"I certify that I executed the within writ in the County of Webster on the 4th day of November, 1921, by searching the residence, smoke-house and other buildings on the land of Bill Lock and finding, taking and seizing one still with copper worm and other attachments thereto, 1½ gallons of whiskey in fruit jars, three 10-gallons of mash and other vessels used in the manufacturing of liquor.

"IRA L. EDMONDS,
"Sheriff of Webster County, Mo."

On the 16th day of January, 1922, the appellants filed their motion to quash the search warrant, and the return of the sheriff thereon, and to suppress any and all evi-

dence obtained by the sheriff and those acting under and with him, under and by virtue of said search warrant.

Said motion to quash, omitting caption, is as follows:

"Come now the defendants in this case and for the purpose of this motion only, represent and show to the court that they stand charged by information prepared and filed by the Prosecuting Attorney of Webster County, Missouri, in this court, with the crime and offense of unlawfully using and having in their possession a still and other apparatus, used and fit to use in the manufacture and production of intoxicating liquors; and, also, with the crime and offense of unlawfully having intoxicating liquors for beverage purposes by use of such still and apparatus, all in violation of Section 6588, Revised Stattes 1919, as amended by the Laws of Missouri, 1921, page 414; that the officers of this court and of the State of Missouri, to-wit: the Sheriff of Webster County and his deputies, and other persons acting with him and under his direction, unlawfully took and have in their possession, and which the State of Missouri intends to use and introduce in evidence on the trial of this cause, a certain still and apparatus, claimed and charged by said information to have been used and possessed by these defendants, and also three 10-gallon barrels of mash and alleged intoxicating liquors claimed and charged to have been in the possession of these defendants.

"These defendants further state that the mash tubs, mash, intoxicating liquor, if any, were unlawfully seized and taken possession of by said officers on November 4, 1921, at and in the private dwelling house and premises of William Lock, in Webster County, Missouri, which was at, occupied and used by these defendants as their home and private residence; and that all of said property above mentioned was illegally and unlawfully seized and is now held by the said officers under and by virtue of an illegal and void search warrant, issued by the clerk of this court under date of Nov. 4, 1921, and is on file in this case; that said search warrant is and was illegal and void as being in violation of the Fourth and Fifth amend-

ments to the Constitution of the United States, and of Section 11, Article 2, and Section 23 of Article 2, of the Constitution of the State of Missouri, providing that the people shall be secure in their persons, homes and effects from unreasonable searches and seizures, and that no warrant to search any place or seize any person or thing shall issue without probable cause, supported by oath or affirmation reduced to writing; and providing further that no person shall be compelled to testify or furnish evidence against himself in a criminal cause.

"Defendants further state and show that the said search warrant purports to have been supported by and based on the oath and affidavit of J. P. Smith, Prosecuting Attorney of Webster County, but such pretended affidavit is a nullity.

"These defendants further state and show to the court that said search warrant is void as being in violation of Section 6595, Laws of Missouri, 1921, page 416, providing that no warrant shall be issued to search a private dwelling occupied as such unless same is used as a hotel, store or shop, or for purposes other than a private dwelling; and these defendants say and show that the said private dwelling of William Lock was not so used, and was, at the time, a private dwelling wholly occupied as such; nor was said search warrant issued on the application to any court by any court, as required in order to search any private dwelling.

"These defendants further deny that said dwelling and residence of William Lock and Anna Lock was at the time of such search and seizure, or at any time, a place of public resort, as stated in the pretended affidavit, and that said search warrant does not describe any premises of William Lock or any other person.

"These defendants further state and show to the court that by the information filed herein by the Prosecuting Attorney of Webster County, Missouri, these defendants stand charged with unlawfully using and possessing on Nov. 4, 1921, a still, worm, tubs and other apparatus used and fit to use in the production of intoxicat-

ing liquors, and also with then and there unlawfully manufacturing intoxicating liquors for beverage purposes, by means of and by use of such still, worm, tubs, and other apparatus. That acting under and by virtue of said void search warrant, the Sheriff of Webster County and his deputies did on Nov. 4, 1921, unlawfully and without right and authority, and in violation of the Constitution and the laws of this State, enter into and search the said private dwelling house and premises of said William Lock and Anna Lock and did then and there unlawfully seize, and now hold, a certain still and some cans, tubs and fruit jars, of alleged intoxicating liquors, and the said sheriff made his return on said void search warrant issued and executed by him as aforesaid, stating: 'By searching the residence, smoke-house and other buildings on the land of Bill Lock and finding and taking seizing one still with copper worm and other attachments thereto; 1½ gallons of whiskey in fruit jars; three 10-gallons of mash and other vessels used in the manufacture of liquor;' and that the things so found and seized by the sheriff while unlawfully searching the dwelling house and premises of William Lock and while acting under and by virtue of said void search warrant, are the same things and intoxicating liquors which these defendants are by the information charged with having unlawfully manufactured and held for beverage purposes.

"These defendants therefore say and show to the court that the State of Missouri by this proceeding charges and will endeavor to prove that the still, so seized and held by the sheriff under and by virtue of said void and unlawful search warrant, was and is the property of the defendant William Lock, and in their possession and use, for the purposes of this motion and in order to invoke their constitutional rights and be protected against the unreasonable and unlawful search and seizure, as aforesaid, admit and aver that they were, at the time the same were seized, and now are the owners and entitled to the possession of said still and intoxicating liquors, so seized and now held by the said sheriff under and by

virtue of the unlawful and void search warrant issued and executed in this case.

"Wherefore the defendants pray the court for an order quashing and holding void the said search warrant, and that all evidence against these defendants, so illegally obtained by said sheriff and his deputies, or other persons acting with him, by and under such search warrant, and while executing the same or in consequence thereof, be suppressed and excluded on the trial of these defendants,.and that the State of Missouri be not allowed to disclose or put in evidence against these defendants, or any of them, any information or knowledge, relative to the offence charged, obtained by the said sheriff, his deputies or other persons, by virtue of or while executing the said search warrant, or in consequence of and connected with the same.

"G. Purd Hays, Attorney at Law."

On the hearing of the motion to quash the search warrant and suppress the testimony obtained by virtue thereof, the evidence on the part of the defense tended to show:

1. The sworn statement of the prosecuting attorney, the search warrant and the sheriff's return thereon were introduced.

2. Defendant William· Lock said in substance that he owned a private residence in the McDaniel School District, occupied by himself, wife and family, which was not used as a hotel or public resort; that the still, mash and other things found by the sheriff were in the smoke-house or yard.

The State's evidence tended to show that the sheriff made the search and the return on the search warrant. Defendant objected and excepted, because the search warrant was illegal and void and did not comply with the Constitution or laws of Missouri. Objection overruled.

Continuing his statement the sheriff said that he found the vat in the smoke-house or grainery, the whiskey in two half-gallon and quart-jars, and the mash, barrels

and tubs in the grainery, and the worm outside. Defendant objected, moved to strike out the evidence and excepted to the ruling, for the reason that all the facts and circumstances related in evidence came to the knowledge of the witness by reason of a void and illegal warrant issued by the clerk.

On the 16th day of January,, 1922, the trial court overruled the motion to quash the said search warrant, and to suppress any and all evidence obtained under and by virtue thereof, to which action of the court the defendants objected and excepted.

On the 17th day of January, 1922, the cause was tried before the court and a jury.

After the jury had been impaneled and the sheriff, Ira L. Edmonds, the first witness, had been sworn to testify, and had stated his name and official position, and that a search warrant had been placed in his hands to search the property of William Lock, and what he did in reference to executing that warrant, defendants objected to further evidence, because the search warrant was illegal and void and in violation of the Constitution of Missouri and the law at page 416 of the Session Laws of 1921.

The evidence on the part of the State tends to show that: On November 4, 1921, a search warrant to search the dwelling house and premises of William Lock was placed in the hands of the sheriff, who in company with a deputy sheriff and a constable went to the residence of defendant at about nine o'clock P. M., knocked at the door, told defendant who they were, and that they had a warrant, read it to him, and made a search of the house, but found nothing. The searchers then made a search of the barn and outbuilding, where they found some jars, a worm, mash and whiskey, and a still hidden about the premises. The sheriff told Mrs. Lock that if she did not tell him where things were and get them, he would take her to jail. Mrs. Lock, during this time, was dressed in her night clothes.

Over the objection and exception of defendants the court allowed to be introduced in evidence, the whiskey, still, jars, worm and vat, identified by the sheriff.

Defendant Anna Lock was the only witness to testify for defendants. Her evidence tended to show that she lived in the McDaniel School District, Webster County, and had for nine years; that she was the wife of William Lock; that she remembered the sheriff and his deputies coming there about half past nine one night; that she did not try to hide any whiskey or other thing; that she acted under the direction of her husband.

I. The Constitution of Missouri provides in Section 11 of Article 2 that: "No warrant to search any place . . . shall issue without describing the place to be searched as nearly as may be; nor without probable cause, supported by oath or affirmation reduced to writing."

Probable Cause.

Of equal importance, in cases of this character, is Section 23, Article 2: "That no person shall be compelled to testify against himself in a criminal cause."

It is stated in State v. Pomeroy, 130 Mo. 498, 32 S. W. 1002, that Section 11, supra, is intended as a restriction on the powers of the government, and not a restraint on the unauthorized act of an individual. In Burdeau v. McDowell, 256 U. S. 465, l. c. 475, the same conclusion is reached, the court stating:

"The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases (Boyd v. United States, 116 U. S. 616; Adams v. New York, 192 U. S. 585; Weeks v. United States, 232 U. S. 383; Johnson v. United States, 228 U. S. 457; Perlman v. United States, 247 U. S. 7; Silverthorne Lumber Co. v. United States, 251 U. S. 385; Gouled v. United States, 255 U. S. 298), its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such au-

thority it was the purpose of the Fourth Amendment to secure the citizen in the right of the unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.''

The probable cause, as defined by Webster, is the existence of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.

The verb ''supported'' is defined by Webster as ''to verify or to substantiate.''

''Verify''—''to prove to be true;'' ''to confirm or establish the authority of, as by affirmation or competent evidence;'' ''to confirm or substantiate by proof.''

''Substantiate''—''to establish the existence or truth of, by true or competent evidence;'' ''to verify.''

The words ''oath'' or ''affirmation'' do not need defining. The words ''reduced to writing,'' include the affidavit or deposition of a witness.

In Hanser v. Bieber, 271 Mo. 326, l. c. 342, it is said: ''The question of probable cause is a mixed one of law and fact. Whether the circumstances alleged show probable cause is a question of fact to be found by the jury. Whether, if true, such circumstances amount to probable cause is a question of law to be determined by the court.''

That probable cause is a mixed question of fact and law states the proposition. As the question of law is dependent upon the existence of facts, probable cause may not be inferred without the magistrate first determining that sufficient facts are stated from which it may arise.

The search warrant, served, was not sworn to. Of itself, it is not supported by the requisite oath or affirmation. The sworn statement of the prosecuting attorney, the support on which the search warrant issued, is the only verified document to which we may look for probable cause; and if it contains any statement of fact from which probable cause may be inferred, it complies with

the Constitution.  If no statement of fact is stated therein, from which probable cause may legally be inferred, the Constitution and defendant's rights, thereunder, have been violated.  The verified statement, however, contains no statement of fact.  While it follows the statute, it sets forth no fact or circumstance whereby the magistrate may determine the probable cause.  His statement is: "I, J. P. Smith, Prosecuting Attorney, . . . state that I verily believe that in the building known as the residence, etc., . . . and further as affiant verily believes that in said building, etc., . . . and a place in which intoxicating liquors are manufactured as affiant verily believes, contrary," etc.,

From the above statement probable cause may not be judicially found.  The affiant gives no reason for his belief, nor does he support, verify or substantiate it, establishing the existence or truth of any fact or circumstance, by proof or competent evidence.  The statement is that he verily believes certain things, contraband by statute, are on the farm of defendant, Bill Lock; and if he verily believed it, however unfounded his belief may have been, no fact appears in the statement that would subject him to legal responsibility.

It is only unreasonable searches and seizures that are prohibited by Section 11.  As is said in Gouled v. United States, 255 U. S. 1. c. 308: "Searches and seizures are as constitutional under the Amendment when made under valid search warrants as they are unconstitutional, because unreasonable, when made without them."

In State v. Davis, 108 Mo. 666, defendant, a druggist and pharmacist, was indicted under Section 4622, Revised Statutes 1899, for refusing to produce, before the grand jury of the county, when lawfully summoned to do so, prescriptions filled by him during the previous year.  The court stated: "We entertain no doubt that the spirit of the constitutional protection, 'that no person shall be compelled to testify against himself in a criminal cause,' also precludes the seizure of one's pri-

vate books and papers in order to obtain evidence against him. [Cooley, Const. Lim. 370; Wharton on Evidence, sec. 751.]''

The court, however, held that such protection did not extend to prescriptions required to be preserved by druggist and pharmacists, because, liquor being without rights, the Legislature had the right to impose its own conditions in authorizing sales. The situation in the present case is totally dissimilar. The prohibition statute not only does not authorize the sale of liquor upon conditions, but wholly prohibits it.

In Pickett v. State, 99 Ga. 12, l. c. 15, the court said: ''While, under Section 4723 of the Code, an officer may, without a warrant, make an arrest for an offense committed in his presence, he has no authority, upon bare suspicion or upon mere information derived from others, to arrest a citizen and search his person in order to ascertain whether or not he is carrying a concealed weapon in violation of the law. The constitution of this State expressly declares in the bill of rights that: 'The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.' [Code, sec. 5008.] If any search is unreasonable and obnoxious to our fundamental law, it is one of the kind with which we are now dealing. Even if the person arrested did in fact have a pistol concealed about his person, the fact not being discoverable without a search, the offense of thus carrying it was not, in legal contemplation, committed in the presence of the officer, and the latter violated a sacred constitutional right of the citizen in assuming to exercise a pretended authority to search his person in order to expose his suspected criminality.''

Cunningham v. Baker, 104 Ala. 160, l. c. 169, the action was garnishment of funds in the hands of the chief of police, who had previously arrested the defendants. At the time of the search there was no warrant for the arrest, capias or other process charging them with any criminal offense against the city, state, other state

or the United States, nor did the authorities ever get any process of any kind during the time of their detention. The court held: "A search of the person arrested is justifiable only as an incident to a lawful arrest; if the arrest be unlawful, the search is unlawful and is aggravated by the illegality of the arrest."

Search warrants, based on the belief of affiant, have been condemned from the early English writings to the present day. An early English treatise, regarding search warrants and probable cause, is found in 2 Hale, Pleas to the Crown, 150, where it is said: "They are not to be granted without oath made before the justice of a felony committed, and that the party complaining hath *probable cause* to suspect they are in such a house or place, and do show his reasons for such suspicion. And, therefore, I do take it, that a general warrant to search in all suspected places is not good, but only to search in such particular places, where the party assigns before the justice his suspicion and the probable cause thereof, for these warrants are *judicial acts,* and must be granted upon examination of the fact."

In 24 Opin. Atty. Gen. 688, it is said: "The section (meaning Sec. 3642, U. S. R. S.) does not state all that must be stated in the application therefor. The Fourth Amendment to the Constitution provides that 'no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.' The determination of the question whether this requirement and those of the section referred to have been met, and whether the warrant should issue in a particular case, is a highly responsible and important duty."

In Coke's Institute Book 4, pp. 176-177, it is said: "For justices of the peace to make warrants upon surmises, for breaking the houses of any subjects to search for felons, or stolen goods, is against Magna Charta."

In Ripper v. United States, 178 Fed. 24, l. c. 26, 101 C. C. A. 152, Love, a revenue agent, made an affi-

davit before a United States commissioner that he had good reason to believe and did believe that the accused was unlawfully engaged in the business of manufacturing oleomargarine with intent to defraud the United States, and prayed the issue of a search warrant to enter and search the premises of the accused, which were described, and if any materials used in the coloring of oleomargarine were found, to seize them for trial. The commissioner issued the search warrant reciting the purport of the affidavit. Commenting on the affidavit, the court said:

"The affidavit on which the warrant was issued set forth no facts from which the existence of a probable cause could be determined; nor did the warrant itself recite the existence of such cause. There was no recital in the warrant that the officer who issued it found or determined there was probable cause, further than a mere statement that some one had declared under oath that he had good reason to believe, and did believe, the accused was violating the law. It is true that Section 3462, Revised Statutes (U. S. Comp. St. 1901, p. 2283), authorizes a search warrant to be issued upon such affidavit, but we think all the requisites are not there expressed. This was also the view of the Attorney-General in an opinion delivered June 19, 1903. [24 Opin. Atty. Gen. 685, 688.]

"The oath in writing should state the facts from which the officer issuing the warrant may determine the existence of probable cause, or there should be a hearing by him with that purpose in view. The immunity guaranteed by the Constitution should not be lightly set aside by a mere general declaration of a non-judicial officer that he has reason to believe, etc. The undisclosed reason may fall far short of probable cause."

In Veeder v. United States, 164 C. C. A. 338, 252 Fed. 414, l. c. 418 and 419, the court said:

"One's person and property must be entitled, in an orderly democracy, to protection against both mob and hysteria and the oppression of agents whom the

State v. Lock.

people have chosen to represent them in the administration of laws which are required by the Constitution to operate on all persons alike.

"No search warrant shall be issued unless the judge has first been furnished with facts under oath—not suspicions, beliefs or surmises—but facts which, when the law is properly applied to them, tend to establish the necessary legal conclusion, or facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences, for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law.

"The finding of the legal conclusion or of probable cause from the exhibited facts is a judicial function, and it cannot be delegated by the judge to the accuser. . . .

"No search warrant should be broader than the justifying basis of facts. . . .

"Applying these principles to McIsaac's affidavit, we observe that not a single statement of fact is verified by his oath. All he swears to is that 'he has good reason to believe and does verily believe' so and so. He does not swear that so and so are true. He does not say why he believes. He gives no facts or circumstances to which the judge could apply the legal standard and decide that there was probable cause for affiant's belief. There is nothing but the affiant's application of his own undisclosed notion of the law to an undisclosed state of facts. And under our system of government the accuser is not permitted to be also the judge."—Writ of *certiorari,* denied, 246 U. S. 675.

302 Mo. Sup.—27.

In United States v. Tureaud, 20 Fed. 621, l. c. 624, it is said:

"The 'probable cause supported by oath or affirmation,' prescribed by the fundamental law of the United States, is, then, the oaths or affidavits *of those persons who, of their own knowledge, depose to the facts which constitute the offense.*

"It does not appear from the affidavit upon which these procedures are based, that the affiant has any knowledge whatever of the truth of the matters contained in the informations; but simply that 'all the statements and averments are true as he verily believes,' i. e., that he believes them all to be true, without any showing as to the grounds of the belief."

In United States v. Pitotto, 267 Fed. 603, an indictment charged defendant with unlawfully and feloniously using a deadly weapon in resisting United States Internal Revenue officers in the execution of a search warrant issued by a United States commissioner. The issuance of the search warrant was based on an affidavit made by affiant "that he has good reason to believe and does verily believe that a fraud upon the revenue of the United States has been and is being committed," etc. The court held that search warrant void, saying: "The affidavit of Charlton complies in language with this statute, but it is obviously insufficient to meet the requirements of the Fourth Amendment to the Constitution. . . . In a word, the requirements of Section 3462, relating to the showing to be made as a basis for issuing the warrant, do not meet the mandatory provisions of the Constitution. . . . In other words, the constitutional provision is paramount. The showing under oath essential upon which to predicate the issuance of the warrant should state pertinent facts from which the magistrate may determine the existence of probable cause, or there should be a hearing by him with the purpose in view. Probable cause is a legal conclusion, which is for the magistrate to deduce from the

facts stated, and the mere assertion under oath that the affiant believed and does believe that a fraud upon the revenue has been or is being committed, is entirely insufficient upon which to predicate the finding of probable cause.''

To the same effect are: United States v. Kelih, 272 Fed. 484; United States v. Borkowski, 268 Fed. 408; United States v. Armstrong, 275 Fed. 506; United States v. Ray, 275 Fed. 1004; In re Tri-State Coal & Coke Co., 253 Fed. 605; United States v. Rykowski, 267 Fed. 866; United States v. Kelly, 277 Fed. 485; United States v. Friedberg, 233 Fed. 313; United States v. Various Documents, 278 Fed. (C. C. A.) 944; United States v. Yuck Kee, 281 Fed. 228; Central Consumers' Co. v. James, 278 Fed. 249; Berry v. United States, 275 Fed. (C. C. A.) 680; Gouled v. United States, 255 U. S. 298.

II.   Section 6595, Laws 1921, page 416, provides that if the Attorney-General, prosecuting attorney or prohibition enforcement officer, shall file a statement verified by oath with the clerk of the circuit court, or other court, having criminal jurisdiction in the county that he verily believes, etc., it shall be the duty of the sheriff to enter said building or structure by force, if necessary, etc.  .  .  .  ''No warrant shall be issued to search a private dwelling occupied as such, unless some part is used as a hotel, store or shop, or for any purpose other than a private dwelling, or upon application to the court good reason is shown that such aforesaid place is used for the purpose of violation of this act or unless such residence is a place of public resort, or a place in which intoxicating liquors are manufactured.''

Except, in the instance, where accused used his private dwelling for the purpose of violating the act, the above statute does not provide a court or magistrate, to whom the existence of probable cause may be submitted for determination.  This is a judicial function

Statute.

which may not be delegated. Courts of competent jurisdiction only, such as our circuit courts, and justices of the peace, when authorized, may determine the existence of probable cause. [24 R. C. L. 706.] In the present case, probable cause was not submitted to a court or even to a justice of the peace, but, upon the prosecuting attorney filing with the circuit clerk a sworn statement that he verily believed, etc., the sheriff executed the search warrant. This was clearly illegal. The sworn statement must be submitted to the proper judicial tribunal, which alone determines whether the facts, if any, show probable cause.

The above statute does not require the circuit clerk to find probable cause, or even issue a search warrant. It provides that the sheriff must enter, by force, if necessary, upon the filing of a sworn statement with the circuit clerk, by the prosecuting attorney. As stated in 24 Opin. Atty. Gen. 288, "the section does not state all that must be stated in the application therefor." Nor does Section 6595, supra, provide all the essentials for the issuance of a search warrant. Something more is necessary. Being a judicial action, the sworn statement should show facts from which probable cause may be determined, as well as stating the place to be searched with particularity. The search warrant, itself, should contain facts, and not inferences, so that the accused may know whether his rights are in jeopardy. This is usually done by copying the facts of the sworn statement, showing probable cause, in the search warrant. As things were left undone that should have been done, even though following the statute, we hold that the proceedings were insufficient, and the search warrant, for the reasons above stated, illegal and void.

III. The search warrant must describe with reasonable particularity the place to be searched, as provided by section 11, Article II, of the Missouri Constitution. Section 6595, Laws 1921, page 416, provides that "in some building or structure to be designated in said statement," etc. It is plain

Description of Place.

that the Constitution permits a search to be made only
when the search warrant describes the place to be
searched with particularity.

The search warrant in this case does not describe
the place to be searched as nearly as may be, as required
by our Constitution. It commands the sheriff "to enter
the building known as residence, dwelling house, barn
and all outbuildings, car, vehicles, and premises, farm
owned, occupied or under the control of Bill Lock, Web-
ster County, Missouri." Such description is insuffi-
cient. [Smith v. McDuffee, 72 Ore. 276.]

Some cases hold that minute description is neces-
sary, such as is sufficient to convey real estate by deed.
We think the description ought to identify the property
with sufficient clearness and certainty, so that a mistake
may not ensue.

IV.  When the sheriff and his assistants knocked
at the door of defendant's home, read the search war-
rant to him, and informed him that they had come to
search the premises, it was, at least, implied
coercion. But it was more, in view of the com-
mand in the search warrant, that if necessary,
he enter with force. There was no element of consent
in the accused then allowing the sheriff to make the
search. [Amos v. United States, 255 U. S. 313.] In
this case the court said: "The contention that the con-
stitutional rights of defendant were waived when his
wife admitted to his home the Government officers, who
came, without warrant, demanding admission to make a
search of it under Government authority, cannot be en-
tertained. We need not consider whether it is possible
for a wife, in the absence of her husband, thus to waive
his constitutional rights, for it is perfectly clear that
under the implied coercion here presented, no such
waiver was intended or effected."

V.  The practice of subjecting the people to unrea-
sonable searches and seizures should find no sanction in

the judgment of courts, which are charged at all times with the support of the Constitution, and to which the people at all times may appeal for the maintenance of such fundamental rights.

This case is not an assertion on the part of the State, recognized under the law, to search the person of the accused, when legally arrested, to discover and seize the fruits or evidences of crime. [Dillon v. O'Brien, 16 Cox C. C. 245; Pickett v. State, 99 Ga. 112; Cunningham v. Baker, 104 Ala. 160; State v. Pomeroy, 130 Mo. 498; State v. Sharpless, 212 Mo. 176.] Nor is this a collateral proceeding where it is attempted to raise, for the first time, the admissibility of the evidence, by an objection during the trial. Nor is it a sworn statement of fact, relative to a larceny of goods, with reasonable grounds to suspect that they are in possession of the one in control of the place to be searched. Nor does it involve the introduction of evidence, used or to be used in the commission of a crime, obtained under a valid and legal search warrant.

This case involves the right, in an original proceeding, supplementary to a criminal action filed, or to be filed, to recover or suppress evidence, seized in the home and on the premises of accused, without his consent or authority, by the sheriff of the county, under a void search warrant, and without a warrant for his arrest, and threatened to be used in his prosecution. The accused, before trial, made timely effort to quash the search warrant, and suppress the evidence obtained under it, as violative of his rights, under the Eleventh and Twenty-third sections of Article II of the Constitution. If property, obtained under levy of a void search warrant, may be seized and used as evidence in the prosecution of the accused, by an unreasonable search, without probable cause, and he is thus forced by the State to produce evidence against himself, the Eleventh and Twenty-third sections become veritable scraps of paper.

Courts and officials, commendable as are their efforts to bring the guilty to punishment, may not be aided

by the sacrifice of people's rights.  Nor may those rights be frittered away because expedient.  If courts and public officials, charged with its enforcement, violate the law of the land in their zeal to convict, it follows that the people, who look to their knowledge and integrity, will not respect the law.  The sheriff could only have invaded the defendant's home and premises when armed with a search warrant, as prescribed by the Constitution.  He may not invade it legally, however, without such warrant.  It is asserted as the correct rule of law that, when evidence comes under the control of the court, it will not inquire into the manner in which it is obtained, but if competent, will keep it and permit its use.  But this rule cannot obtain.  If so, the Constitution is meaningless.  It becomes as sounding brass and a tinkling cymbal, and is valueless as a guaranty of any right.  The Constitution does not prohibit searches and seizures, but only such as are unreasonable.  Searches and seizures, however, are unreasonable that do not follow the Constitution; and a search warrant issued without probable cause, does not follow it and is void.

The use of evidence, obtained illegally, and in contravention of fundamental rights, permits to be done by indirection, that which may not be done directly.  To affirm that the Constitution secures people in their persons, papers, homes and effects against unreasonable searches and seizures, and then to assert that although the people are secure from violations of their rights by the State, as guaranteed by the law of the land, yet assenting that their security may be carried from them on the wind where it lists, is taking away that which is given.  The aforesaid contentions are inconsistent.  We must necessarily hold to the one or the other; and we prefer the interpretation that conforms to the spirit and the letter of the Constitution rather than to its emasculation.  The State may not profit by taking advantage of its own wrongful act.  This would lead to direful consequences.

We have no quarrel with the rule of law that the question of the introduction of evidence, obtained without

a search warrant or by virtue of an illegal one, may not be properly raised in a criminal cause by objecting to its use, for the first time, during the trial. We have held, in many cases, that constitutional questions must be raised at the earliest opportunity that good pleading and orderly procedure admit. [Lohmeyer v. Cordage Co., 214 Mo. 685; Strother v. Railroad, 274 Mo. 272.]

The issue is not collateral, however, when raised in a motion to quash the search warrant, and suppress the evidence, wherein the constitutional provisions relied upon, as violative of guaranteed rights, are pointed out; or, when raised by a motion, either before or after the filing of an information or indictment, for the return of the property.

The State contends that evidence obtained under a void search warrant is admissible within the rule laid down in State v. Pomeroy, 130 Mo. 489, and State v. Sharpless, 212 Mo. 176. The rule of evidence, as there enunciated, upholding the right of the police, upon making a lawful arrest without a search warrant, to search the person of the suspect and the room occupied by him, and to seize any instruments or evidence of crime thus discovered, has long been the accepted doctrine. [Weeks v. United States, 232 U. S. 383, 392.] Nor do we controvert this doctrine, in so far as the person of the accused is concerned.

In State v. Pomeroy, supra, the defendant was lawfully arrested in his place of business. On his person and in his desk, after his arrest, were found a number of lottery tickets. Defendant complained that their admission in evidence was improper. Referring to and quoting from a Massachusett's case, which was *obiter dictum* on the facts, it was said: "that the illegality of the search warrant was no good reason for excluding papers seized as evidence, if they were pertinent to the issue, nor would it form a collateral issue to determine that question."

In State v. Sharpless, supra, papers taken from the accused, after his arrest, were admitted in evidence. The

court, in distinguishing this case from Boyd v. United States, 116 U. S. 616, said, quoting from Gindrat v. People, 138 Ill. 103:

"In the latter case, the unconstitutional and erroneous order, process and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to produce evidence from the defendants, and neither made orders nor issued process authorizing or purporting to authorize a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully. Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard to the source from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right."

In both of the above cases, the papers were taken from the person of the defendant, or his desk, after his arrest. It is established that after a lawful arrest, for a definite crime charged, or when the officer sees the accused committing a crime, the person of the accused, and his premises, where contraband articles are seen under lawful entry, may properly be examined, without a warrant, for the purpose of finding evidence of his guilt. [Cunningham v. Baker, 104 Ala. 160; Pickett v. State, 99 Ga. 12.] But the State may not arrest a person, without a warrant, and without evidence of a crime, upon suspicion, and convict the accused upon the evidence found on him. [Pickett v. State, 99 Ga. 12.]

The Pomeroy Case and the Sharpless Case, supra, recognize the doctrine of collateral issue, that the accused may not wait until the day of trial, and then, by an objection, exclude testimony and articles obtained by an il-

legal search. The accused, in the above cases, did not attempt to bring the matter to the attention of the court, in an original, independent or supplementary proceeding.

In the case at bar, the issue was not collateral. Defendant, by his motion to quash and suppress, raises an original and independent issue, which we must notice. The right to exclude evidence, where timely action is taken, is recognized in many cases. [Weeks v. United States, 232 U. S. 383; Silverthorne Lumber Co. v. United States, 251 U. S. 385; Gouled v. United States, 255 U. S. 298; Flagg v. United States, 233 Fed. 481; Giles v. United States, 284 Fed. (C. C. A.) 208; People v. Marxhausen, 204 Mich. 559.]

In some few cases, it is held that the objection to the admissibility of the evidence, during the trial, is sufficient. [Youman v. Comm., 189 Ky. 152: State v. Sheridan, 121 Iowa, 164; State v. Height, 117 Iowa, 650-661; Blum v. State, 94 Md. 375; Town of Blacksburg v. Beam, 104 S. C. 146; State v. Slamon, 73 Vt. 212; Underwood v. State, 13 Ga. App. 206.]

Lord CAMDEN's opinion, in Entick v. Carrington, 19 How. St. Tr. 1029, is the ground work of all subsequent discussion. It is considered one of the landmarks of English liberty. [Boyd v. United States, 116 U. S. 616, 626.] Lord CAMDEN links the privilege against unreasonable searches with that against self-incrimination and condemns, not only the general character of the warrants, but also the fact that they are issued to search out evidence, a ruling of great importance: "It is very certain, that the law obligeth no man to accuse himself; because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be cruel and unjust; and it would seem that search for evidence is disallowed upon the same principle."

Two things have been declared by Lord CAMDEN: that general warrants were void for uncertainty, and that search for evidence violated the principle against self-incrimination. Such, then, would seem to be the law which the amendment was intended to perpetuate. It is

significant that the amendment itself is in two parts—one which forbids "unreasonable searches," and the other which requires certain particulars to be observed before warrants may be issued. This prohibition against "unreasonable searches" must, therefore, have been intended to cover something other than the form of the warrant. [Fraenkel on Searches and Seizures, 34 Harvard Law Review, 361.]

The opinion of Lord CAMDEN in the Entick Case, supra, considering the compulsory production of papers, held: And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom.

In Youman v. Commonwealth, 198 Ky. 152, l. c. 165, 166, the court, in commenting upon searches and seizures by officers of the law, well said:

"Returning now for a moment to the facts of this case for the purpose of making plain our position, it stands admitted that the evidence offered on the trial and to the introduction of which objection was then made, was obtained in an unlawful way by a county officer charged with the duty of giving complete obedience to the Constitution and laws of the State. This officer in violation of the Constitution and in disregard of the statute pointing out the way in which premises might be searched took the law into his own hands, invaded the premises of and went into the buildings of the suspected offender, and without asking or obtaining his consent proceeded to and did search for and find the liquor that was seized.

"On these facts the question presented is: will courts established to administer justice and enforce the laws of the State receive, over the objection of the accused, evi-

dence offered by the prosecution that was admittedly obtained by a public officer in deliberate disregard of law for the purpose of securing the conviction of an alleged offender?

"In other words, will courts authorize and encourage public officers to violate the law and close their eyes to methods that must inevitably bring the law into disrepute in order that an accused may be found guilty? Will a high court of the State say in effect to one of its officers that the Constitution of the State prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by so doing you may go to his premises, break open the doors of his house and search it in his absence, or over his protest if present, and this court will permit the evidence so secured to go to the jury to secure his conviction?

"It seems to us that a practice like this would do infinitely more harm than good in the administration of justice. That it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends designed to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital, fundamental principle of the law in order to secure his conviction.

"In the exercise of their great powers courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay or even defeat the ends of justice in the particular case, it is better for the public good that this should happen than that a great constitutional mandate should be nullified.

"It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer and this should be sufficient satisfaction. Perhaps so far as the rights of the individual are concerned this might answer, but it does

not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petit offender.''

In Weeks v. United States, 232 U. S. 383, in reversing a conviction, because the trial court denied a motion to return, and allowed the use of, evidence obtained in an illegal search, the court said: ''If letters and private documents can thus be seized and held and used as evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution.''

In Giles v. United States, 284 Fed. (C. C. A.) 208, the court held the search warrant to be void; that ·the Government's seizure was unauthorized; that the denial of the motion to quash the indictment and for the return of the property was error; so, also, was the admission, in evidence, of the seized property against defendants.

In People v. Marxhausen, 204 Mich. 559, 571-2, where the authorities are carefully considered and the correct rule is well stated, the court distinguishes Boyd v. United States, 116 U. S. 616, and Weeks v. United States, 232 U. S. 389, from the rule of law enunciated in State v. Pomeroy, 130 Mo. 489, and State v. Sharpless, 212 Mo. 176. We quote the Michigan opinion as follows:

''We are impressed, however, that a careful consideration of the Boyd Case in connection with the Adams Case and the decisions of the State courts, some of which are cited above, but many of which are not, taken in the light of what was said by the court in the Weeks Case, demonstrates that in the main the United States Supreme Court and the courts of last resort of the various states are in accord, and that the Boyd Case does not conflict as its critics claim, with the holdings of the many State courts. The Adams Case and many State cases along the line of that case belong to one class of cases, while the Boyd and Weeks cases belong to another class of cases.

In the Adams and similar cases the question of the legality of the search and seizure was sought to be raised collaterally, not by direct proceedings. In these cases the objection was not made until the article or paper unlawfully seized was offered in evidence. It must be patent that upon the trial of a criminal case the court cannot pause in the trial when a bit of evidence, admissible under general rules, is offered, to engage in a collateral inquiry as to how the prosecution became possessed of such evidence. That would be the trial of a collateral matter, and as a general proposition the courts have so held, and where the evidence offered was competent, have not paused in the trial to determine the collateral issue of whether the evidence was legally secured or not. . . .

"In the Boyd and Weeks cases, the question was not raised collaterally, but in both cases by a direct proceeding; in the Boyd Case by an affirmative order of the court requiring claimant to produce the invoice, which order was directly assailed in the review of the case in the Supreme Court, and which order was held to invade the claimant's rights under the Federal Constitution; in the Weeks Case by a negative order refusing the return of the property taken by the unlawful search and seizure, which order was directly assailed upon review in the Supreme Court, and which order was held by that court to have denied defendant his constitutional rights.

"From this consideration of these cases it is obvious that the rule underlying them is that when defendant in a criminal case for the first time upon the trial objects to the admission in evidence of articles taken by unlawful search and seizure, and they are admissible under general rules governing the admissibility of proof, the court will not pause in the trial of the case to determine the collateral question of whether the prosecution became lawfully possessed of such articles; but that where it is made to appear before the trial that articles have been taken from the possession of the defendant in violation of his constitutional rights and by unlawful search

and seizure and without any search warrant at all, it then becomes the duty of the trial court to order the return to the defendant of the articles thus unlawfully taken. The rule is thus stated in 10 R. C. L. p. 933:

" 'The principle underlying the decisions admitting the evidence is that an objection to an offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy and materiality of the evidence offered, and that consequently the court, on such an objection, cannot enter on the trial of a collateral issue as to the source from which the evidence was obtained. But since there is a right, there must of necessity be a remedy, and the remedy is to be found in the making of a timely application to the court for an order directing the return to the applicant of the papers unlawfully seized. On such an application, the question of the illegality of the seizure may be fully heard, and if the court erroneously refuses to order a return of the papers, and thereafter receives them in evidence against the applicant over his objection, it is an error for which a judgment of conviction must be reversed.'

"Turning now to our own cases we find them in strict harmony with the rule announced. This court has held that the courts will not pause in the trial of a cause to open up a collateral inquiry of whether a wrong has been committed in obtaining information which a witness possesses. [Cluett v. Rosenthal, 100 Mich. 193; People v. Aldorfer, 164 Mich. 676; People v. Campbell, 160 Mich. 108, 34 L. R. A. (N. S.) 58.] But this court has also held upon an application made before trial for mandamus to set aside an order of the circuit court, permitting the police department to take possession of property of the citizen, pending investigation for crime and depriving the owner of its possession, that the order should be vacated and set aside, resulting in the return of the property thus unlawfully withheld. [Newberry v. Carpenter, 107 Mich. 567, 31 L. R. A. 163.] "

For the foregoing reasons, we think the evidence obtained in the unlawful search and seizure by the sheriff

and his assistants, should have been excluded. [Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. Rep. 524, 29 L. Ed. 746; Woods v. United States, 279 Fed. 710; Honeycutt v. United States, 277 Fed. 941; Johnston v. United States, 87 Fed. 187, 30 C. C. A. 612; United States v. Baumert, (D. C.) 179 Fed. 735; United States v. Friedberg, (D. C.) 233 Fed. 313; United States v. Rykowski, (D. C.) 267 Fed. 866; United States v. Maresca, (D. C.) 266 Fed. 713; Veeder v. United States, 252 Fed. 415, 164 C. C. A. 338; United States v. Yuck Kee, (D. C.) 281 Fed. 228; Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568; Cases collected by Fraenkel on Searches and Seizures, 34 Harvard Law Review, 361.]

VI. A word of comment, for future reference, with respect to the affidavit and search warrant, may not be amiss. They are so inartificially drawn, and the words and paragraphs so disconnected, that a careful consideration would, unless a judicial construction supplied words, hold them meaningless.

*Affidavit.*

VII. The facts in the present case show that the only evidence relied upon to convict defendant was obtained by virtue of a void and illegal search warrant. Therefore, as defendants insisted that they were entitled to the possession of the articles seized under the search warrant, it results that the direct attack made by the motion to quash and suppress the evidence, because in violation of rights under the Constitution, should have been sustained.

In that the State, in a retrial of the cause, may have an opportunity to produce additional evidence, if any it has, tending to show defendants' guilt, we reverse and remand the cause, for such proceedings as are not inconsistent herewith. *Railey, C.,* concurs; *Higbee, C.,* dissents.

PER CURIAM:—The foregoing opinion of Davis, C., is adopted as the opinion of Court en Banc. *Woodson, C. J.;* and *Graves, James T. Blair, White* and *Ragland, JJ.,* concur; *David E. Blair* and *Walker, JJ.,* dissent for the reasons expressed in the dissenting opinion of *David E. Blair, J.,* in State v. Owens, *ante,* page 380.

Headnote 1:   Courts, 15 C. J. sec. 512;   Headnotes 2, 4, 5 and 6: Searches and Seizures, 35 Cyc. 1266, 1272 (1926 Anno).